# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN MARY MULCAHY,  :  <br>     Plaintiff,  : <br>   : <br> v.  : <br>   : <br> LEIGH SKIPPER, et al,  : <br>     Defendants.  : | CIVIL ACTION NO. 20-6049 |

**Diamond, J.**          <u>**MEMORANDUM**</u>          **August 24, 2021**

*Pro se* Plaintiff Kathleen Mulcahy charges that this District's Federal Community Defender engaged in age discrimination when it fired and failed to promote her. The Defender argues that because Mulcahy has failed to show that she was replaced by a younger person, or even the age of the person ostensibly promoted in her stead, she has not made out a *prima facie* case of age discrimination. Remarkably, Mulcahy now acknowledges that she does not know who, if anyone, replaced her or whether age figured at all in the decision not to promote her. The Defender also argues that Mulcahy's evaluations confirm and reconfirm that it took adverse employment actions because of her incompetence. Mulcahy responds that the evaluations are "fabrications"— although she offers no supporting evidence. Finally, the record belies Mulcahy's claim that because of her age, she was subjected to a hostile work environment. In these circumstances, I will grant the Defender's Motion for Summary Judgment.

**I.**      **JURISDICTION**

Mulcahy purports to bring this action pursuant to the Pennsylvania Human Relations Act, the Philadelphia Fair Practices Ordinance, the First, Fifth, and Fourteenth Amendments, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII. <u>See</u> 43 Pa. Stat. Ann. § 951 et seq.; Phila. Code. § 9-

1101, et seq.  The Court has jurisdiction to hear Mulcahy's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction to hear Mulcahy's state law claims under 28 U.S.C. § 1367.

## II.     LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must first show the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  An issue is "genuine" if there is evidence on which a reasonable fact finder could return a verdict for the nonmoving party.  Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A factual dispute is "material" if it might affect the case's outcome under governing law.  Id. (citing Anderson, 477 U.S. at 248).  I must view facts and draw all reasonable inferences in the opposing party's favor, although "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment."  Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010); see Anderson 477 U.S. at 255.

If the moving party satisfies its burden, the opposing party must then show a disputed material factual issue.  It is not enough simply to reiterate factual allegations or "show some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the nonmoving party must establish a triable issue by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the responding party fails to make a factual showing "sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

I must construe *pro se* submissions liberally. See Liggon-Redding v. Est. of Sugarman, 659 F.3d 258, 265 (3d Cir. 2011).

### III.   CAUSES OF ACTION

Mulcahy raises wide-ranging claims, including: "hostile work environment, age discrimination, failure to promote, denial of due process and equal protection," and violations of the "First, Fifth and Fourteenth Amendments of the United States Constitution." (Complt. at ¶¶1-2, Doc. No 2; Resp. at 4, Doc. No. 36.) Yet, she fails to offer any evidence supporting most of these claims, and often fails to describe them at all. (See, e.g., Resp. at 4-10 (omitting any description or analysis of equal protection or due process).) Even now, at summary judgment, it is by no means clear that Mulcahy is pressing any claim other than age discrimination. I will nonetheless construe her *pro se* filings liberally and address the claims she appears to raise.

### IV.   FACTS

I have construed all facts and resolved all disputes in Mulcahy's favor. See Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

A. Poor Performance

Mulcahy began working for the Defender on August 26, 2002 as a part-time, job-share paralegal. (Complt. at ¶ 6.) Mulcahy's supervisors were Nina Spizer, Elizabeth Toplin, and Jennifer Herman. (Pl.'s Dep. at 51:6-11, Doc. No. 39.) Mulcahy was an at-will employee. (Def. SUMF ¶ 72 ("all FCDO employees are at-will and can be terminated at any time, with or without cause"); Doc. No. 30-6, Ex. B at FCDO_721.) From 2006 until 2017, Mulcahy prepared attorneys for federal parole hearings before the United States Parole Commission. (Pl.'s Dep. at 42:6-45:18.)

3

In January 2016, Herman conducted Mulcahy's annual performance review. (1/25/16 Evaluation, Doc. No. 30-6, Ex. B at FCDO_456-459.) In the written evaluation, Herman stated that "[s]everal projects [assigned to Mulcahy] languished and required follow up by the assigned attorney." (Id.) Herman asked Mulcahy to be more receptive to criticism and learning new skills. (Id.)

In April 2016, Mulcahy began full-time work—which was to last only until June 30, 2016—so that she could devote half her time to the 'Johnson project' (by which the Defender sought to determine which of its clients might benefit from the Supreme Court's decision in Johnson v. United States, 576 U.S. 591 (2015)). (4/6/16 Memo, 6/28/16 Memo, Doc. No. 30-6, Ex. B at FCDO_465-466.) Mulcahy's supervisors were dissatisfied with Mulcahy's subsequent performance on the project, with Spizer telling Mulcahy in an email that:

> I am incredibly disappointed in your lack of commitment to the [Johnson] project. I gave you full time hours in order to move the project forward. In this last leg you have taken days off, called out sick, not communicated well and fallen behind. You were supposed to start filing Monday but didn't get trained until well into Wednesday. You have called out today with no notice to me that you did so. I have now lost another full day since no one else is trained.

(6/17/16 Spizer Email, Doc. No. 30-6, Ex. B at FCDO_464.) Spizer also noted: Mulcahy's lack of communication; that Mulcahy's skills were "not where they needed to be"; and Mulcahy's need to improve her attention to detail and understanding of the "overall process" of criminal defense. (Pl.'s Dep. at 109:1-111:14.)

In 2016, Mulcahy also worked "off and on" in the Appeals Unit, where she was criticized for having a "bad attitude." (Pl.'s Dep. at 49:11-50:23.) That same year, Mulcahy sought promotion to a full-time paralegal position in the Non-Capital Habeas Unit, but the job was given to Andrew Alston (who had, years before, been convicted of involuntary manslaughter). (Pl.'s Dep. at 82:3-11; 86:18-97:4.)

4

In 2017, Mulcahy's responsibilities changed, so that she would work in "a more paralegal capacity." (Id. at 46:18-47:17; 1/25/16 Evaluation.) In November 2017, Spizer instructed Mulcahy to prepare an expert witness database of names, contact information, and other information. (Id. at 131:1-135:9.) In January 2018, Mulcahy was assigned to work on five motions for early termination of supervision. (Pl.'s Dep. at 125:1-126:11; 2019 Evaluation, Doc, No. 30-6, Ex. B. at FCDO_607-610.) By April 30, 2018 she had completed only one motion—which had to be rewritten because it was "incoherent"—and had done no work on the expert spreadsheet, explaining that she "had little experience in excel spreadsheets." (2019 Performance Evaluation at FCDO_608.) Spizer and Herman criticized Mulcahy for these failings and for poor productivity. (Id. at 131:21-132:20, 176:9-177:18.)

In February 2019, Mulcahy jeopardized a Defender client's cooperation agreement by instructing the client to "no longer speak to the government" regarding an active investigation. (2019 Performance Evaluation at FCDO_610.) In April 2019, Mulcahy drafted a supervision termination petition—filed under Toplin's name—in which she misrepresented the position of the Probation Department, compelling Toplin to concede error before the Court. (2019 Performance Evaluation at FCDO_608.) On April 4, 2019 Mulcahy met with Spizer, Toplin, and Herman to discuss her poor performance. (4/4/19 Meeting Notes, Doc. No. 30-6, Ex. B at FCDO_646-649.) On April 23, 2019, Mulcahy was fired by Chief Federal Defender Leigh Skipper. (6/26/19 Skipper Mem., Doc. No. 30-6, Ex. B at FCDO_667; Skipper Decl., Doc. No. 30-6, Ex. C.)

At the time of her termination, Mulcahy was fifty-three years old. (Pl.'s Dep. at 11:16-17.) Spizer, Toplin, and Herman were then forty-six, fifty-three, and forty-three years old, respectively. (Skipper Decl., Doc. No. 30-7, Ex. C.) Chief Defender Skipper, who made the final decision to terminate Mulcahy, was fifty-eight years old. (Id.)

B. Work Environment

At some point during Mulcahy's employment, a supervisor said something like "hot flashes," but Mulcahy cannot recall the "specific statement," when it was made, or in what context. (Pl.'s Dep. at 62:4-65:21.)  At a similarly unspecified time, Mulcahy "remember[s] [a supervisor] giving [Mulcahy] attitude of that's ancient history and how long ago did that happen." (Id. at 65:24-66:10.)  Again, however, Mulcahy cannot recall the actual statement, when it was made, or to what it referred.  (Id. at 66:3-68:16; id. at 67:16-23 ("Q: Do you know in what context -- any alleged statements regarding ancient history were made? A[Mulcahy]: No. Q: And you're unable to state to me exactly what you're claiming that [the supervisor] said about ancient history, correct? A[Mulcahy]:Correct").)

Mulcahy does not know who, if anyone, replaced her, nor does the record include that information.  (Pl.'s Dep. at 84:18-23.)  The undisputed evidence shows that Jack O'Donnell, whom Mulcahy had alleged was her replacement, *did not replace her.*  (Id. at 72:25-81:4; 6/6/19 Skipper Memo, Doc. No. 30-6, Ex. B at FCDO_667.)

At some point during Mulcahy's employment, she was offended when a supervisor purportedly displayed a satirical news article: 'Breaking News Stevie Wonder Arrested for Viewing Kiddie Porn'.  (Pl.'s Dep. at 81:4-25; Complt. at ¶ 9.)  Finally, in Mulcahy's view, Defender attorneys took long lunches, shopped on Amazon during the workday (with their orders then being delivered to the office), and "treat[ed] people that were . . . not in their economic class" in a manner that was "absolutely abhorrent." (Id.)

V.     PROCEDURDAL HISTORY

On August 13, 2019, Mulcahy filed a Charge of Discrimination with both the EEOC and PHRC. (Doc. No. 1, Ex. B.) On September 1, 2020, the EEOC issued her a right to sue letter. (Doc. No. 1, Ex. A.)

Mulcahy initiated this *pro se* action by filing a Complaint on November 30, 2020, naming the Defender Organization, as well as individual Defendants Leigh Skipper, Nina Spizer, Elizabeth Toplin, and Jennifer Herman. (Complt., Doc. No. 1.) On February 8, 2021, after Mulcahy asked me to appoint counsel, I referred this matter to the Title VII Employment Panel. (Doc. No. 11.) After more than ninety days had passed without a Panel Attorney agreeing to represent Mulcahy, she chose to proceed *pro se*. (Doc. No. 16.) On June 3, I granted Defendants' Dismissal Motion in part and dismissed the individual Defendants, as Mulcahy had not named them in her administrative filings. (See Doc. Nos. 13, 17, 18, 19.)

Although Mulcahy propounded discovery requests—some of them grossly overbroad and abusive—she sat for deposition only on threat of sanctions. (Doc. Nos. 24, 25, 29.) Throughout her deposition, Mulcahy said she was unable to recollect key events. (See, e.g., Pl.'s Dep. at 65:24-66:25; id. at 119:24-121:24; id. at 131:5-13; id. at 56:15-24; id. at 109:17-21.) She repeatedly made insulting and pejorative remarks about Defender personnel. (See, e.g., id. at 142:1-7; id. at 203:6-21; id. at 233:17-23; id. at 234:17-235.)

On July 23, the Defender Organization—the sole remaining Defendant—moved for summary judgment. (MSJ, Doc. No. 30.) Mulcahy has responded in opposition. (Doc. Nos. 35, 36, 37, 40.)

## VI. DISCUSSION

Age discrimination appears to be the only claim Mulcahy raises. She alleges that because of her age, she was fired and subjected to a hostile work environment. She also notes in passing that she did not receive a promotion to a full-time position because of her age and may also have been the subject of equal protection, due process, and First Amendment violations. Mulcahy offers no evidence to support any of these Constitutional claims, however. Indeed, she does not even describe them.

### A. Failure to Make Out a *Prima Facie* Case

To make out a *prima facie* age discrimination claim, the plaintiff must show that he or she:

(1) is at least forty years old;
(2) suffered an adverse employment decision;
(3) was qualified for the position in question; and
(4) was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.

See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015); see also Connors v. Chrysler Fin. Corp., 160 F.3d 971, 972 (3d Cir.1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both."); Joseph v. Continental Airlines, Inc., 126 F.Supp.2d 373, 379 n.3 (E.D. Pa. 2000) (PFPO claims are analyzed under the same framework as Title VII claims). The Age Discrimination in Employment Act's 'protected class' is thus anyone forty or over. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996).

Although Mulcahy pled that Jack O'Donnell (a younger man) had replaced here, the record shows without contradiction that O'Donnell did not replace her. (Pl.'s Dep. at 72:19-21; 6/6/19 Skipper Memo at FCDO_667.) Indeed, by the time of her deposition, Mulcahy acknowledged that O'Donnell *did not* replace her. (Id. at 72:19-21 ("Q. Is it your position that Jake O'Donnell

8

replaced you at the FCDO? A[Mulcahy:]. No.")  Mulcahy offers no evidence to show who, if anyone, did.  Mulcahy thus has failed to make out a *prima facie* case of age discrimination in termination.  See, e.g., Breaux v. Rosemont Realty, 768 F. App'x 275, 278 (5th Cir. 2019) (no *prima facie* case where plaintiff failed to show who replaced them).

Similarly, Mulcahy has not made out a *prima facie* case of age discrimination in promotion because there is no evidence of Andrew Alston's age at the time he was hired to the full-time paralegal position Mulcahy sought.  (Id. at 103:18-25 ("[Mulcahy:] Do I know [Alston's] age? No.").)  Mulcahy thus cannot show that Alston's hiring raises a discriminatory inference because of his purported youth.  Indeed, Mulcahy testified that she has *no idea* if age played *any role* in her failure to obtain the paralegal position for which Alston was eventually hired.  (Pl.'s Dep. at 95:25-97:4 ("Q: Do you believe that the reason why you didn't get that position had anything to do with your age? A[Mulcahy]: I have no idea why. So no. I don't know.").)

These failures to make out a *prima facie* case thus entitle the Defender to summary judgment on Mulcahy's termination and failure to promote claims.

B. Mulcahy's Incompetent Job Performance

Even assuming *arguendo* that Mulcahy has made out a *prima facie* case, there is ample evidence showing the Defender had a nondiscriminatory reason for the adverse employment actions it took: she did her job poorly.  There is nothing in the record suggesting that this justification was pretextual.

The burden-shifting framework applied here is well-established.  Once a plaintiff has made out a *prima facie* case, the burden shifts to the employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999) (citing Keller, 130 F.3d at 1108); see also  Fuentes v. Perskie, 32

F.3d 759, 763 (3d Cir. 1994).  If the employer does so, then the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual.  Willis, 808 F.3d at 644.

The record here includes memoranda and emails authored by Mulcahy's supervisors detailing her deficient performance.  For instance, Mulcahy's 2019 Performance Evaluation provides that she: "had significant difficulty" with basic duties; "misrepresented the position of the Probation Department in a filing made under Betsy Toplin's name"; and showed "a lack of judgement [sic], questionable credibility issues and an unwillingness to work independently." (2019 Performance Evaluation at FCDO_610-611.)  As I have described, Mulcahy's incompetent performance had been documented for years.  (See Def. SUMF ¶¶ 15-71.)  At one 2018 meeting to discuss Mulcahy's progress on various items, a supervisor observed Mulcahy "slurring her words," while another supervisor found her to be "not coherent . . . . unstable, agitated, and difficult to understand."  (Doc. No. 30-6, Ex. B at FCDO_478.)  The Defender thus had "grave concerns about allowing [Mulcahy] to draft any further motions or have further contact with clients."  (Def. SUMF ¶ 64.)

Mulcahy responds that all the adverse written performance reviews and memoranda are fabrications created after her termination.  (See, e.g., Pl.'s SUMF Resp. at ¶ 21; id. at ¶ 55 (accusing Defender of "[f]abricating documents"); id. at ¶ 62 ("[poor evaluation] was not created until after Defendant's [sic] terminated [Mulcahy's] employment on April 23, 2019").)   Once again, however, she has presented no evidence to support this poisonous accusation.  Moreover, there is no evidence showing that she performed her work competently.  Mulcahy refuses to "verify[]" most of the verbal reprimands she received regarding her poor job performance.  (Pl's Dep. at

10

152:20-153:4.)  And although Mulcahy recalls some verbal criticism of her work, she dismisses them as "pretext":

> Q: What do you mean when you say that was pretext?
> A [Mulcahy]: Pretext.
> Q: Pretext for what?
> A [Mulcahy]: For the bullshit that I'm going through right now.

(Pl's Dep. at 136: 2-5.)  Mulcahy's abusive language—repeatedly using the word "bullshit" throughout her deposition—does not make out pretext by an evidentiary preponderance.  See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010) ("[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment"); see also See Fed. R. Civ. P. 56(c)/(e) (court may consider fact undisputed where a party fails to support denial with record citations).

Finally, it is undisputed that the three supervisors who recommended Mulcahy's firing were all over forty, and Leigh Skipper—who made the final decision to fire Mulcahy—is *older than she is*.  See Elwell v. PP&L, 47 Fed. Appx. 183, 189 (3d Cir. 2002) (citing Dungee v. Ne. Foods, 940 F. Supp. 682, 688 n.3 (D.N.J. 1996)) ("a plaintiff's ability to raise an inference of discrimination is hampered when the decision maker is a member of the plaintiff's protected class").

In these circumstances, the Defender is, again, entitled to summary judgment.

C. Work Environment

Mulcahy must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  Nat'l. R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (internal quotation marks omitted).  The discrimination must be "because

11

of" the employee's protected status or activity. Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007).

Here, Mulcahy offers only her deposition testimony to show age-related hostility. Yet, most of this evidence has nothing to do with her age and so does not support a discrimination claim. Id. at 643; see also Howell v. Millersville Univ. of Pennsylvania, 283 F. Supp. 3d 309, 332 (E.D. Pa. 2017), aff'd, 749 F. App'x 130 (3d Cir. 2018) (acts that are "neutral with respect to [] age" do not support age-based hostile work environment claim). For instance, she repeatedly mentions the Stevie Wonder article. (Pl.'s Dep. at 83:4-8; 85:11-24.) That Mulcahy found the article offensive has nothing to do with her claimed age discrimination, however. Similarly beside the point are Mulcahy's allegations regarding her supervisors' purported online shopping and economic class condescension.

Mulcahy's deficient recollection of the 'hot flash' and 'ancient history' comments does not establish a hostile work environment. First, given Mulcahy's inability to recall each comment's context, when it was made, the actual words uttered, or even any indication that the comments were directed at Mulcahy, there is no 'hostility' evident. (See Pl.'s Dep. at 65:16-21 ("[Mulcahy]: . . . I can't remember anything right now. No. I cannot remember any specific statements right now, no.").) Moreover, in the absence of context, there is nothing inherently discriminatory about the comments themselves (assuming these were the words actually used). Finally, two isolated remarks over some seventeen years' employment do not amount to "severe or pervasive" discriminatory animus. See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) ("offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment"); Hamzah v. Woodman's Food Mkt., Inc., 693 F. App'x 455, 458 (7th Cir. 2017) (single comment that plaintiff was "too old

to work on parcel and carts" did not make out hostile work environment); Khachikian v. BASF Corp., 1993 WL 463734 (N.D.N.Y. Nov. 5, 1993), aff'd, 43 F.3d 1457 (2d Cir. 1994) (plaintiff being called an "old fart" and "old camel jockey" on a few occasions was insufficient to state a hostile work environment claim and survive summary judgment).

Mulcahy's hostile work environment claim thus cannot survive summary judgment.

D. Other 'Claims'

Mulcahy's passing references to equal protection, due process, and the First Amendment do not make out viable claims. She may not pursue her age discrimination allegations through the equal protection clause. See Hildebrand v. Allegheny Cty., 757 F.3d 99, 110 (3d Cir. 2014) ("Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment"). Nor does the record offer any basis for a due process claim, as Mulcahy was an at-will employee, and thus had no property interest in retaining her position "sufficient to trigger due process concerns." See Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (citing Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir.2005)); (Def. SUMF ¶ 72 ("all FCDO employees are at-will and can be terminated at any time, with or without cause"); Doc. No. 30-6, Ex. B at FCDO_721). Finally, Mulcahy does not even begin to make out a First Amendment claim: she does not identify any protected statement or other activity or how it caused her firing. See Howell v. Millersville Univ. of Pennsylvania, 283 F. Supp. 3d 309, 334 (E.D. Pa. 2017), aff'd, 749 F. App'x 130 (3d Cir. 2018). Accordingly, insofar as Mulcahy purports to raise other Constitutional claims, I will dismiss them.

VII. CONCLUSION

The record makes painfully clear that Kathleen Mulcahy suffered adverse employment actions because she was a poor employee. Her allegations that the Defender discriminated against

13

her are utterly without support and often offensive. Accordingly, I will grant the Defender's Motion for Summary Judgment.

An appropriate Order follows.

**AND IT IS SO ORDERED:**

Dated: 8/24/21                                     */s/ Paul S. Diamond*

                                                    _____
                                                    Paul S. Diamond, J.